| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| M. ERIK CLARK<br>BOROWITZ, LOZANO & CLARK, LLP<br>100 N. Barranca Avenue, Suite 250<br>West Covina, CA 91791<br><br>(626)332-8600<br><br>188693<br>*Attorney for* | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA

| In re: ELIZABETH VEGA | |
|---|---|
| | **CHAPTER:** 13 |
| | **CASE NO.:** LA09-16697-EC |
| Debtor(s). | (No Hearing Required) |

## DECLARATION RE: ENTRY OF ORDER WITHOUT HEARING
## PURSUANT TO LOCAL BANKRUPTCY RULE 9013-1(o)

1. I am the ☐ Movant ☒ Movant's Attorney    in this matter and hereby declare as follows:

2. On *(specify date)*: 8/31/09 _____ , Movant filed a motion entitled *(specify)*: Notice of Motion and Motion to Avoid Lien Under 11 USC 522(f) (Real Property)

3. A copy of the motion and notice of motion is attached hereto.

4. Pursuant to Local Bankruptcy Rule 9013-1(o), the motion was served by mail on *(specify date)*: 8/31/09 _____ , together with a notice stating that any party objecting to the motion has 15 days within which to file and serve any written objection and request a hearing on the above motion.

5. More than 15 ____ days have passed since the service of the notice of motion.

6. No objection has been timely served on Movant at the address specified in the notice. Therefore, no hearing is required.

7. The proposed Order is submitted herewith. *(Submit original and appropriate copies of Order with envelopes and Notice of Entry)*

WHEREFORE, Movant requests that the Order granting the relief requested in the motion be signed and entered forthwith.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on the following date at West Covina _____ , California.

Dated: September 24, 2009

M. Erik Clark _____
*Typed Name of Declarant*

_____
*Signature of Declarant*

---

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-1.9**

F901319

| | |
|---|---|
| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
| M. ERIK CLARK<br>BOROWITZ, LOZANO & CLARK, LLP<br>100 N. Barranca Avenue, Suite 250<br>West Covina, CA 91791<br><br>(626)332-8600<br><br>188693<br>*Attorney for* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

In re: ELIZABETH VEGA

| | |
|---|---|
| | CHAPTER: 13<br>CASE NO.: LA09-16697-EC |
| Debtor(s). | (No Hearing Required) |

## DECLARATION RE: ENTRY OF ORDER WITHOUT HEARING
## PURSUANT TO LOCAL BANKRUPTCY RULE 9013-1(o)

1. I am the [ ] Movant  [x] Movant's Attorney   in this matter and hereby declare as follows:

2. On *(specify date)*: 8/31/09_____ , Movant filed a motion entitled *(specify)*: Notice of Motion and Motion to Avoid Lien Under 11 USC 522(f) (Real Property)

3. A copy of the motion and notice of motion is attached hereto.

4. Pursuant to Local Bankruptcy Rule 9013-1(o), the motion was served by mail on *(specify date)*: 8/31/09_____ , together with a notice stating that any party objecting to the motion has 15 days within which to file and serve any written objection and request a hearing on the above motion.

5. More than 15____ days have passed since the service of the notice of motion.

6. No objection has been timely served on Movant at the address specified in the notice. Therefore, no hearing is required.

7. The proposed Order is submitted herewith. *(Submit original and appropriate copies of Order with envelopes and Notice of Entry)*

WHEREFORE, Movant requests that the Order granting the relief requested in the motion be signed and entered forthwith.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on the following date at West Covina_____ , California.

Dated: September 24, 2009

M. Erik Clark_____
*Typed Name of Declarant*

_____
*Signature of Declarant*

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                              **F 9013-1.9**

F901319

Case 2:09-bk-16697-EC   Doc 36   Filed 09/25/09   Entered 09/25/09 10:24:42   Desc
Declaration Re: Entry of Order without Hearing Pursuant to
Local Bankruptcy Rule 9013-1(o) - *Page 2*

**F 9013-1.9**

| | |
|---|---|
| In re ELIZABETH VEGA | **CHAPTER:** 13 |
| **Debtor(s).** | **CASE NO.:** LA09-16697-EC |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
100 N. Barranca Avenue, Ste. 250
West Covina, CA 91791

A true and correct copy of the foregoing document described as <u>Declaration Re: Entry of Order without Hearing Pursuant to Local Bankruptcy Rule 9013-1(o)</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On <u>September 24, 2009</u> I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| <u>September 24, 2009</u> | <u>Yesenia Chicas</u> | *Yesenia Chicas* |
| Date | Typed Name | Signature |

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Elizabeth Vega
688 North Rimsdale Avenue, #8
Covina, CA 91722

Wells Fargo Financial Bank
P.O. Box 98751
Las Vegas, NV 89193

Arrow Financial Services
5996 W. Touhy Ave
Niles, IL 60714

Bank of America
P.O. Box 17054
Wilmington, DE 19884

Bank of America
Attention: Bankruptcy Department
4161 Peidmont Parkway
Greensboro, NC 27420

Bank of America
P.O. Box 15026
Wilmington, DE 19850-5026

Bank of America
P.O. Box 15726
Wilmington, DE 19886

Beneficial
P.O. Box 1547
Chesapeake, VA 23327

Beneficial
P.O. Box 60101
City Of Industry, CA 91716-0101

Beneficial
Attention: Bankruptcy Department
961 Weigel Drive
Elmhurst, IL 60126

Beneficial
1854 East Route 66
Glendora, CA 91740

CBA Collection Bureau
25954 Eden Landing Road
Hayward, CA 94545

Chase
800 Brooksedge Blvd.
Westerville, OH 43081

Chase
Attention: Bankruptcy Department
500 White Clay Center Drive
Newark, DE 19711

Chase
P.O. Box 509011
San Diego, CA 92150-9011

Chase
P.O. Box 15298
Wilmington, DE 19850-5298

Chase
P.O. Box 94014
Palatine, IL 60094

Citibank
Attention: Bankruptcy Department
7920 Northwest 110th Street
Kansas City, MO 64153

Collection Bureau of America
25954 Eden Landing Road, 1st Floor
Hayward, CA 94545

Covina Palms HOA
P.O. box 1510
Upland, CA 91785

Credit Management
4200 International Pwy
Carrolton, TX 75007

E-One Financial
1155 Corporate Center Drive
Monterey Park, CA 91754

Equifax - Credit Bureau
P.O. Box 105069
Atlanta, GA 30348

Eskanos & Adler
2325 Clayton Road
Concord, CA 94520

Experian - Credit Bureau
P.O. Box 2002
Allen, TX 75013

Franchise Tax Board
Attention: Bankruptcy Department
P.O. Box 942857
Sacramento, CA 94257

HFC
Attention: Bankruptcy Department
961 Weigel Drive
Elmhurst, IL 60126

HomEq Servicing
P.O. Box 13716
Sacramento, CA 95853

Homeq Servicing
4837 Watt Avenue, Suite 100
North Highlands, CA 95660

Honorable Ellen Carroll
United States Bankruptcy Court
255 E. Temple Street, Suite 1634
Los Angeles, CA 90012

HSBC
Attention: Bankruptcy Department
P.O. Box 4552
Buffalo, NY 14240

HSBC
Attention: Bankruptcy Department
P.O. Box 5246
Carol Stream, IL 60197

HSBC
Attention: Bankruptcy Department
6602 Convoy Court
San Diego, CA 92111

HSBC
Attention: Bankruptcy Department
P.O. Box 17909
San Diego, CA 92177

HSBC
Attention: Bankruptcy Department
P.O. Box 5213
Carol Stream, IL 60197

HSBC
Attention: Bankruptcy Department
P.O. Box 5253
Carol Stream, IL 60197

HSBC Bank
P.O. Box 5253
Carol Stream, IL 60197

HSBC Bank
P.O. Box 19360
Portland, OR 97280

HSBC Card Services
P.O. Box 60102
City Of Industry, CA 91716

HSBC Card Services
P.O. Box 60084
Salinas, CA 93912-1313

IndyMac Bank
460 Sierra Madre Villa Avenue
Pasadena, CA 91107

Innovat Collection
P.O. Box 3500
Tustin, CA 92781

Internal Revenue Service
Attention: Bankruptcy Department
P.O. Box 21126
Philadelphia, PA 19114

Kathy Dockery
Chapter 13 Trustee
700 South Flower Street, Suite 1950
Los Angeles, CA 90017

Law Office Of M.n.kay
7 Penn Plz
New York, NY 10001

LVNV Funding, LLC
P.O. Box 740281
Houston, TX 77274

Macy's
9111 Duke Boulevard
Mason, OH 45040

Macy's
Attention: Bankruptcy Department
6356 Corley Road
Norcross, GA 30071

Macys
P.O. Box 6938
The Lakes, NV 88901-6938

Mann Bracken, LLC
2325 Clayton Road
Concord, CA 94520

Nissan Motor Acceptance
P.O. Box 660360
Dallas, TX 75266

Nissan Motor Acceptance
P.O. Box 254648
Sacramento, CA 95865

Rosicki, Rosicki & Associates, P.C.
Nationwide Default Services
51 E. Bethpage Rd.
Attn: Andrew Goldberg Agent
Plainview, NY 11803

Sacramento County Sheriffs Office
Sheriffs Civil Division
3341 Power Inn Road 8919
Sacramento, CA 95826

Sears
P.O. Box 6189
Sioux Falls, SD 57117

Sears
Attention: Bankruptcy Department
P.O. Box 6924
The Lakes, NV 88901

Sears Credit Cards
P.O. Box 6937
The Lakes, NV 88901

Superior Court of California
Case# 08B04047
1427 West Covina Parkway
West Covina, CA 91790

T-Mobile
Attention: Bankruptcy Department
P.O. Box 37380
Albuquerque, NM 87176

Time Warner Cable
6021 Katella Avenue, Suite 100
Cypress, CA 90630

Time Warner Cable
c/o CBA Collections Bureau
25954 Eden Landing Road
Hayward, CA 94545

Time Warner Cable
P.O. Box 660702
Dallas, TX 75266

Time Warner Cable
P.O. Box 60074
City Of Industry, CA 91716

United States Trustee
Ernst & Young Plaza
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017

US Bank Home Mortgage
4801 Frederica Street
Owensboro, KY 42301

Wachovia Dealer Services
P.O. Box 25341
Santa Ana, CA 92799-5341

Wachovia Dealer Services
2143 Convention Center Way #200
Ontario, CA 91764

Washington Mutual
P.O. Box 9180
Pleasanton, CA 94566

Washington Mutual
Attention: Bankruptcy Department
P.O. Box 44118
Jacksonville, FL 32231

Washington Mutual
P.O. Box 660487
Dallas, TX 75266

Washington Mutual
100 North Citrus Street
West Covina, CA 91791

Wells Fargo
Attention: Bankruptcy Department
4143 121st Street
Urbandale, IA 50323

Wells Fargo
P.O. Box 98751
Las Vegas, NV 89193-8751

Wells Fargo
Attention: Bankruptcy Department
711 West Broadway
Tempe, AZ 85282

Wells Fargo Financial
3201 North 4th Avenue
Sioux Falls, SD 57104

Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number

**M. Erik Clark**
**100 N. Barranca Avenue, Suite 250**
**West Covina, CA 91791-1600**
**(626) 332-8600 Fax: (626) 332-8644**
California State Bar Number: 188693

*Attorney for Debtor*

FOR COURT USE ONLY

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

In re:

**Elizabeth Vega**

CHAPTER ___13___

CASE NO.: LA09-16697-EC

Debtor(s).

(No Hearing Required)

## NOTICE OF MOTION AND MOTION TO AVOID LIEN
### UNDER 11 U.S.C. § 522(f) (REAL PROPERTY)
### (Creditor Name: __Beneficial California, Inc.__)
*(Insert Name of Creditor holding Lien to be Avoided)*

1. TO THE CREDITOR, CREDITOR'S ATTORNEY AND OTHER INTERESTED PARTIES:

2. *NOTICE IS HEREBY GIVEN that the Debtor hereby moves this Court for an Order, without a hearing, avoiding a lien on the grounds set forth below.*

3. **Deadline for Opposition Papers:**
   Pursuant to Local Bankruptcy Rule 9013-1(g)(1), any party objecting to Debtor's Motion may file and serve a written objection and request a hearing on this Motion. If you fail to file a written response within fifteen (15) days of the date of service of this Notice, the Court may treat such failure as a waiver of your right to oppose this Motion and may grant the requested relief.

4. **Type of Case:**
   a. ☐ A Voluntary Petition under Chapter    ☐ 7    ☐ 11    ☐ 12    ☒ 13 was filed on: 3/24/2009
   b. ☐ An Involuntary Petition under Chapter    ☐ 7    ☐ 11 was filed on:
      ☐ An Order of Relief under Chapter    ☐ 7    ☐ 11 was entered on:
   c. ☐ An Order of Conversion to Chapter    ☐ 7    ☐ 11    ☐ 12    ☐ 13 was entered on:
   d. ☐ Other:

5. **Procedural Status:**
   a. ☒ Name of Trustee Appointed (if any): Kathy A. Dockery
   b. ☐ Name of Attorney of Record for Trustee (if any):

6. Debtor claims an exemption in the subject real property under:
   a. ☒ California Code of Civil Procedure § __703.140(b)(1)__ (Homestead): Exemption amount claimed on Schedules: $ __1.00__
   b. ☐ California Code of Civil Procedure § _____ Exemption amount claimed on Schedules: $_____
   c. ☐ Other Statute *(specify):*

**(Continued on next page)**

*Revised August 2005* This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.    **F 9013-1.5**

Software Copyright (c) 1996-2009 Best Case Solutions - Evanston, IL - (800) 492-8037    Best Case Bankruptcy

Motion to Avoid Lien (Real Property) - Page 2                              F 9013-1.5

| In re | | CHAPTER __13__ |
|---|---|---|
| **Elizabeth Vega** | | |
| | Debtor(s). | CASE NO.: **LA09-16697-EC** |

7. Debtor's entitlement to an exemption is impaired by judicial lien, the details of which are as follows:

    a. Date of Entry of Judgment *(specify)*:  **11/24/08**

    b. Case Name *(specify)*: Beneficial California, Inc. vs. Elizabeth Vega, et al

    c. Docket Number *(specify)*:  **08B040-47**

    d. Date of Recordation of Lien *(specify)*:  **2/3/09**

    e. Recorder's Instrument Number or Map/Book/Page *(specify)*:  **20090142601**

8. The property claimed to be exempt is as follows:

    a. Street Addresses *(specify)*:        688 N. Rimsdale Avenue #8

                                        Covina, CA 91722

    b. Legal Description *(specify)*:       ☐ See Attached Page

9. Debtor acquired the property claimed exempt on the following date *(specify)*:  **1999  (year)**

10. Debtor alleges that the fair market value of the property claimed exempt is: $___372,000___.

11. The subject property is encumbered with the following liens (list mortgages and other liens in order of priority and place an "X" as to the lien to be avoided by this Motion):

| Name of Lien Holder | "X" | Date Lien Recorded | Original Lien Amount | Current Lien Amount | Date of Current Lien |
|---|---|---|---|---|---|
| **U.S. Bank National (HomEq Servicing)** | | | $  250,000 | $320,000 | |
| **U.S. Bank Home Mortgage** | | | $  80,000 | $80,000 | |
| **Beneficial California, Inc.** | X | 2/3/09 | $  15,739.42 | $25,465.82 | |
| | | | $ | | |

12. Debtor attaches copies of the following documents in support of the motion (as appropriate):

    a. ☒ Schedule C listing all exemptions claimed by Debtor(s)

    b. ☒ Appraisal of the property

    c. ☐ Documents showing current balance due as to the liens specified in Paragraph 11 above

    d. ☒ Recorded Abstract of Judgment

    e. ☐ Recorded Declaration of Homestead (Homestead Exemption)

    f. ☒ Declaration(s) Elizabeth Vega

    g. ☐ Other *(specify)*:

13. Total number of attached pages of supporting documentation: ___63___

---

*Rev. August 2005* This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.  **F 9013-1.5**

Software Copyright (c) 1996-2009 Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

2

Motion to Avoid Lien (Real Property) • Page 3

**F 9013-1.5**

| In re | CHAPTER __13__ |
|---|---|
| **Elizabeth Vega** | |
| Debtor(s). | CASE NO.: **LA09-16697-EC** |

14. Debtor declares under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this motion was executed on the following date at __West Covina__, California.

WHEREFORE, Debtor prays that this Court issue an Order (a copy of the form of which is submitted herewith and has been served) avoiding the creditor's lien.

Dated: August __27__ , 2009

_____
Debtor's Signature

Dated: August __27__ , 2009

**Borowitz, Lozano & Clark, LLP**
Law Firm Name

By: _____

Name: __M. Erik Clark 168693__
Attorney for Debtor

---

### PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA COUNTY OF __Los Angeles__

I am employed in the above County, State of California. I am over the age of 18 and not a party to the within action. My business address is as follows: _100 N. Barranca Ave., suite 250, West Covina, CA 91791_

On __August 31, 2009__, I served the foregoing document described as: NOTICE OF MOTION AND MOTION TO AVOID LIEN UNDER 11 U.S.C. § 522(f) (REAL PROPERTY) on the lienholder whose lien is sought to be avoided, the lienholder's attorney (if known), on the Chapter __13__ Trustee and the United States Trustee at their last known addresses by placing a true and correct copy thereof in a sealed envelope with postage thereon fully prepaid in the United States Mail at __West Covina__, California, addressed as follows:

☒ Addresses continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: August __31__ , 2009

__Yesenia Chicas__
Type Name

_____
Signature

---

*Rev. August 2005* This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-1.5**

Software Copyright (c) 1996-2009 Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

Elizabeth Vega
688 North Rimsdale Avenue, #8
Covina, CA 91722

Wells Fargo Financial Bank
P.O. Box 98751
Las Vegas, NV 89193

Arrow Financial Services
5996 W. Touhy Ave
Niles, IL 60714

Bank of America
P.O. Box 17054
Wilmington, DE 19884

Bank of America
Attention: Bankruptcy Department
4161 Peidmont Parkway
Greensboro, NC 27420

Bank of America
P.O. Box 15026
Wilmington, DE 19850-5026

Bank of America
P.O. Box 15726
Wilmington, DE 19886

Beneficial
P.O. Box 1547
Chesapeake, VA 23327

Beneficial
P.O. Box 60101
City Of Industry, CA 91716-0101

Beneficial
Attention: Bankruptcy Department
961 Weigel Drive
Elmhurst, IL 60126

Beneficial
1854 East Route 66
Glendora, CA 91740

CBA Collection Bureau
25954 Eden Landing Road
Hayward, CA 94545

Chase
800 Brooksedge Blvd.
Westerville, OH 43081

Chase
Attention: Bankruptcy Department
500 White Clay Center Drive
Newark, DE 19711

Chase
P.O. Box 509011
San Diego, CA 92150-9011

Chase
P.O. Box 15298
Wilmington, DE 19850-5298

Chase
P.O. Box 94014
Palatine, IL 60094

Citibank
Attention: Bankruptcy Department
7920 Northwest 110th Street
Kansas City, MO 64153

Collection Bureau of America
25954 Eden Landing Road, 1st Floor
Hayward, CA 94545

Covina Palms HOA
P.O. box 1510
Upland, CA 91785

Credit Management
4200 International Pwy
Carrolton, TX 75007

E-One Financial
1155 Corporate Center Drive
Monterey Park, CA 91754

Equifax - Credit Bureau
P.O. Box 105069
Atlanta, GA 30348

Eskanos & Adler
2325 Clayton Road
Concord, CA 94520

Experian - Credit Bureau
P.O. Box 2002
Allen, TX 75013

Franchise Tax Board
Attention: Bankruptcy Department
P.O. Box 942857
Sacramento, CA 94257

HFC
Attention: Bankruptcy Department
961 Weigel Drive
Elmhurst, IL 60126

HomEq Servicing
P.O. Box 13716
Sacramento, CA 95853

Homeq Servicing
4837 Watt Avenue, Suite 100
North Highlands, CA 95660

Honorable Ellen Carroll
United States Bankruptcy Court
255 E. Temple Street, Suite 1634
Los Angeles, CA 90012

HSBC
Attention: Bankruptcy Department
P.O. Box 4552
Buffalo, NY 14240

HSBC
Attention: Bankruptcy Department
P.O. Box 5246
Carol Stream, IL 60197

HSBC
Attention: Bankruptcy Department
6602 Convoy Court
San Diego, CA 92111

HSBC
Attention: Bankruptcy Department
P.O. Box 17909
San Diego, CA 92177

HSBC
Attention: Bankruptcy Department
P.O. Box 5213
Carol Stream, IL 60197

HSBC
Attention: Bankruptcy Department
P.O. Box 5253
Carol Stream, IL 60197

HSBC Bank
P.O. Box 5253
Carol Stream, IL 60197

HSBC Bank
P.O. Box 19360
Portland, OR 97280

HSBC Card Services
P.O. Box 60102
City Of Industry, CA 91716

HSBC Card Services
P.O. Box 60084
Salinas, CA 93912-1313

IndyMac Bank
460 Sierra Madre Villa Avenue
Pasadena, CA 91107

Innovat Collection
P.O. Box 3500
Tustin, CA 92781

Internal Revenue Service
Attention: Bankruptcy Department
P.O. Box 21126
Philadelphia, PA 19114

Kathy Dockery
Chapter 13 Trustee
700 South Flower Street, Suite 1950
Los Angeles, CA 90017

Law Office Of M.n.kay
7 Penn Plz
New York, NY 10001

LVNV Funding, LLC
P.O. Box 740281
Houston, TX 77274

Macy's
9111 Duke Boulevard
Mason, OH 45040

Macy's
Attention: Bankruptcy Department
6356 Corley Road
Norcross, GA 30071

Macys
P.O. Box 6938
The Lakes, NV 88901-6938

Mann Bracken, LLC
2325 Clayton Road
Concord, CA 94520

Nissan Motor Acceptance
P.O. Box 660360
Dallas, TX 75266

Nissan Motor Acceptance
P.O. Box 254648
Sacramento, CA 95865

Rosicki, Rosicki & Associates, P.C.
Nationwide Default Services
51 E. Bethpage Rd.
Attn: Andrew Goldberg Agent
Plainview, NY 11803

Sacramento County Sheriffs Office
Sheriffs Civil Division
3341 Power Inn Road 8919
Sacramento, CA 95826

Sears
P.O. Box 6189
Sioux Falls, SD 57117

Sears
Attention: Bankruptcy Department
P.O. Box 6924
The Lakes, NV 88901

Sears Credit Cards
P.O. Box 6937
The Lakes, NV 88901

Superior Court of California
Case# 08B04047
1427 West Covina Parkway
West Covina, CA 91790

T-Mobile
Attention: Bankruptcy Department
P.O. Box 37380
Albuquerque, NM 87176

Time Warner Cable
6021 Katella Avenue, Suite 100
Cypress, CA 90630

Time Warner Cable
c/o CBA Collections Bureau
25954 Eden Landing Road
Hayward, CA 94545

Time Warner Cable
P.O. Box 660702
Dallas, TX 75266

Time Warner Cable
P.O. Box 60074
City Of Industry, CA 91716

United States Trustee
Ernst & Young Plaza
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017

US Bank Home Mortgage
4801 Frederica Street
Owensboro, KY 42301

Wachovia Dealer Services
P.O. Box 25341
Santa Ana, CA 92799-5341

Wachovia Dealer Services
2143 Convention Center Way #200
Ontario, CA 91764

Washington Mutual
P.O. Box 9180
Pleasanton, CA 94566

Washington Mutual
Attention: Bankruptcy Department
P.O. Box 44118
Jacksonville, FL 32231

Washington Mutual
P.O. Box 660487
Dallas, TX 75266

Washington Mutual
100 North Citrus Street
West Covina, CA 91791

Wells Fargo
Attention: Bankruptcy Department
4143 121st Street
Urbandale, IA 50323

Wells Fargo
P.O. Box 98751
Las Vegas, NV 89193-8751

Wells Fargo
Attention: Bankruptcy Department
711 West Broadway
Tempe, AZ 85282

Wells Fargo Financial
3201 North 4th Avenue
Sioux Falls, SD 57104

## DECLARATION OF ELIZABETH VEGA

I, Elizabeth Vega, hereby declare and state as follows:

1.     That I have personal knowledge of the facts set forth herein, I am over 18 years of age and if called upon as  witnesses, I could and would competently testify hereto in a court of law.

2.     I filed for relief under Chapter 13 of the United States Bankruptcy Code on March 24, 2009, under case number 2:09-bk-16697-EC.

3.     At the time of filing, my residence was, and continues to be, a single family home located at 688 N. Rimsdale Avenue #8, Covina, CA 91722.

4.     I claimed an Exemption under C.C.P. Section 703.140(b)(1) in the amount of $1.00.  A true and correct copy of my schedule "C" is attached hereto as Exhibit "1."

5.     That at the time of filing my case, Chad Harris, a real estate appraiser conducted an evaluation of my home and concluded that the fair market value of my home was $372,000. Attached as Exhibit "2" is a true and correct copy of the appraisal report.

6.     US Bank National Association is the beneficiary of a note secured by a first deed of trust on my home.  The principal balance owing US Bank National is approximately $417,000.00. Attached hereto as Exhibit "3," is a true and correct copy of US Bank National's proof of claim.

7.     US Bank Home Mortgage is the beneficiary of a note secured by a second deed of trust on my home. The principal balance owing US Bank Home Mortgage is approximately $80,000.00. Attached hereto as Exhibit "4," is a true and correct copy of my mortgage statement.

8.     Beneficial California, Inc. recorded an Abstract of Judgment (the "Lien") on or about February 3, 2009, securing their judgment against my husband and I in the amount of $15,739.42.  I am the sole obligor in connection with the debt owed to Beneficial California, Inc. and the lien filed against me.  A true and correct copy of the Abstract of Judgment is attached hereto as Exhibit "5."

9.     The lien impairs my Exemption.

1

1      I, Elizabeth Vega declare under penalty of perjury that the foregoing is true and correct and that

2  the declaration was executed on August 27, 2009 at West Covina, California.

3

4

5

Elizabeth Vega
6  Debtor

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

# EXHIBIT 1

9

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| Filer's Name: | M. Erik Clark | Atty Name (if applicable): | M. Erik Clark |
| Street Address: | 100 N. Barranca Avenue, Suite 250<br>West Covina, CA 91791-1600 | CA Bar No. (if applicable): | 188693 |
| Filer's Telephone No.: | (626) 332-8600 | Atty Fax No. (if applicable): | (626) 332-8644 |

| In re: | Case No. LA09- 16697 -EC |
|---|---|
| **Elizabeth Vega** | Chapter 13 |

## AMENDED SCHEDULE(S) AND/OR STATEMENT(S)

A filing fee of $26.00 is required to amend any or all of Schedules "D" through "F." An addendum mailing list is also required as an attachment if creditors are being added to the creditors list. Is/are creditor(s) being added?
☐ Yes          ☒ No

Indicate below which schedule(s) and/or statement(s) is(are) being amended.

☐A   ☐B   ☒C   ☐D   ☐E   ☐F   ☐G   ☐H   ☐I   ☐J
   ☐ Statement of Social Security Number(s)      ☐ Statement of Financial Affairs
   ☐ Statement of Intention                        ☐ Other

**NOTE:** IT IS THE RESPONSIBILITY OF THE DEBTOR TO MAIL COPIES OF ALL AMENDMENTS TO THE TRUSTEE AND TO NOTICE ALL CREDITORS LISTED IN THE AMENDED SCHEDULE(S) AND TO COMPLETE AND FILE WITH THE COURT THE PROOF OF SERVICE ATTACHED.

I/We, **Elizabeth Vega**, the person(s) who subscribed to the foregoing Amended Schedule(s) and/or Statement(s) do hereby declare under penalty of perjury that the foregoing is true and correct.

DATED: 8-28-09

**\*\*FOR COURT USE ONLY\*\***

/Elizabeth Vega
Debtor Signature

Co-Debtor Signature

**\*\*SEE PROOF OF SERVICE\*\***

B-1008 *Revised November 2003*

Software Copyright (c) 1996-2009 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037          Best Case Bankruptcy

10

B6C (Official Form 6C) (12/07)

In re  **Elizabeth Vega**_____,   Case No.  **LA09-16697-EC**_____
Debtor

# SCHEDULE C - PROPERTY CLAIMED AS EXEMPT - AMENDED

Debtor claims the exemptions to which debtor is entitled under:   ☐ Check if debtor claims a homestead exemption that exceeds
(Check one box)   $136,875.
☐ 11 U.S.C. §522(b)(2)
☑ 11 U.S.C. §522(b)(3)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Real Property** Residence: 688 North Rimsdale Avenue, #8 Covina, CA 91722 | C.C.P. § 703.140(b)(1) | 1.00 | 372,000.00 |
| Debtor purchased property in 1999 for $250,000. Current market value is based upon comparable sales. | | | |
| **Checking, Savings, or Other Financial Accounts, Certificates of Deposit** Checking Account Pacific Western Bank Covina Branch | C.C.P. § 703.140(b)(5) | 10.00 | 10.00 |
| Checking Account Washington Mutual Bank West Covina Branch | C.C.P. § 703.140(b)(5) | 5.00 | 5.00 |
| **Security Deposits with Utilities, Landlords, and Others** Security Deposit - Southern California Edison | C.C.P. § 703.140(b)(5) | 750.00 | 750.00 |
| **Household Goods and Furnishings** Miscellaneous furniture, household goods, appliances and electronics located at residence. | C.C.P. § 703.140(b)(3) | 2,000.00 | 2,000.00 |
| **Wearing Apparel** Miscellaneous clothing and accessories located at residence. | C.C.P. § 703.140(b)(3) | 200.00 | 200.00 |
| **Furs and Jewelry** Miscellaneous jewelry located at residence. | C.C.P. § 703.140(b)(4) | 100.00 | 100.00 |
| Total: | | 3,066.00 | 375,065.00 |

__0__  continuation sheets attached to Schedule of Property Claimed as Exempt

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037   Best Case Bankruptcy

| In re: Elizabeth Vega | CHAPTER 13 |
|---|---|
| Debtor(s). | CASE NUMBER  LA09-16697-EC |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Borowitz, Lozano & Clark, L.L.P.
100 N. Barranca Avenue, Suite 250
West Covina, CA 91791

The foregoing document described **Amended Schedule C**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served):**
On __August 28, 2009_____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 28, 2009 | Yesenia Chicas | *Yesenia Chicas* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**

| In re: Elizabeth Vega | | CHAPTER 13 |
|---|---|---|
| | Debtor(s). | CASE NUMBER  LA09-16697-EC |

## II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL

Elizabeth Vega
688 N. Rimsdale Avenue #8
Covina, CA 91722

Honorable Ellen Carroll
U.S. Bankruptcy Court
255 E. Temple Street, Suite 1634
Los Angeles, CA 90012

Kathy A. Dockery
Chapter 13 Trustee
700 S. Flower Street, Suite 1950
Los Angeles, CA 90017

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                    **F 9013-3.1**

13

# EXHIBIT 2

14

Harris Appraisals

File No. C090050

········ INVOICE ········

File Number: C090050                        March 27 ,2009

Invoice # :
Order Date :
Reference/Case # :
PO Number :

688 N Rimsdale Ave #8
Covina, CA  91722

| | | |
|---|---|---|
| GPAR | $ | 350.00 |
| | $ | |
| Invoice Total | $ | 350.00 |
| State Sales Tax @ | $ | 0.00 |
| Deposit | ($ | 350.00 ) |
| Deposit | ($ | ) |
| Amount Due | $ | 0.00 |

Terms:   To be paid upon receipt.

Please Make Check Payable To:

Harris Appraisals

Fed. I.D. #: C.H.

15218 Summit Avenue, Ste. 300 #348 Fontana, CA 92336



14

**Harris Appraisals**

File No. C090050

Borowitz Lozano & Clark LLP
100 N. Barranca Ave. Ste. 250
West Covina, CA 91791

File Number:  C090050

In accordance with your request, I have appraised the real property at:

688 N Rimsdale Ave #8
Covina, CA  91722

The purpose of this appraisal is to develop an opinion of the defined value of the subject property, as improved.
The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the defined value of the property as of   March 27, 2009                              is:

$372,000
Three Hundred Seventy-Two Thousand  Dollars

The attached report contains the description, analysis and supportive data for the conclusions,
final opinion of value, descriptive photographs, assignment conditions and appropriate certifications.

Chad Harris

Harris Appraisals

## Residential Appraisal Report

File No. C090050

The purpose of this appraisal report is to provide the client with a credible opinion of the defined value of the subject property, given the intended use of the appraisal.

Client Name/Intended User **Borowilz Lozano & Clark LLP**   E-mail **mcaballero@blclaw.com**

Client Address **100 N. Barranca Ave. Ste. 250**   City **West Covina**   State **CA**   Zip **91791**

Additional Intended User(s) **N/A**

Intended Use **bankruptcy**

Property Address **688 N Rimsdale Ave #8**   City **Covina**   State **CA**   Zip **91722**

Owner of Public Record **Vega Elizabeth**   County **Los Angeles**

Legal Description **Tr#46810 Lot 100**

Assessor's Parcel # **8434-014-063**   Tax Year **2008**   R.E. Taxes $ **3,423**

Neighborhood Name **Covina Palms**   Map Reference **598-J5**   Census Tract **4057.00**

Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)

My research [X] did [ ] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Prior Sale/Transfer: Date **06/11/2007**   Price **80,000**   Source(s) **Realist. Com**

Analysis of prior sale or transfer history of the subject property and comparable sales, if applicable   **The subject property last transferred as the result of a second mortgage on 6/11/2007 for $80,000.**

Offerings, options and contracts as of the effective date of the appraisal   **N/A**

### Neighborhood Characteristics

| Location | | One-Unit Housing Trends | | One-Unit Housing | Present Land Use % |
|---|---|---|---|---|---|

| Location | [ ] Urban [X] Suburban [ ] Rural | Property Values | [ ] Increasing [ ] Stable [X] Declining | PRICE / AGE | One-Unit | **91** % |
|---|---|---|---|---|---|---|
| Built-Up | [X] Over 75% [ ] 25-75% [ ] Under 25% | Demand/Supply | [ ] Shortage [X] In Balance [ ] Over Supply | $(000) (yrs) | 2-4 Unit | **3** % |
| Growth | [ ] Rapid [X] Stable [ ] Slow | Marketing Time | [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | 360 Low 14 | Multi-Family | **2** % |

Neighborhood Boundaries **Cypress Street north, Azusa Avenue Avenue east, San Bernardino Road**   485 High 55   Commercial **2** %

**south Lark Ellen Avenue east.**   410 Pred. 25   Other Vacant **2** %

Neighborhood Description **See Attached Addendum.**

Market Conditions (including support for the above conclusions)   **See Attached Addendum.**

Dimensions **See Plat Map**   Area **3280 Sqft.**   Shape **Rectangular**   View **Residential**

Specific Zoning Classification **Cvm1-C3a***   Zoning Description **Resid-Planned**

Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No   If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | City Service | Water | [X] | City Service | Street Asphalt | [X] | [ ] |
| Gas | [X] | City Service | Sanitary Sewer | [X] | City Service | Alley None | [ ] | [ ] |

Site Comments **See Plat Map**

| GENERAL DESCRIPTION | FOUNDATION | EXTERIOR DESCRIPTION materials | INTERIOR materials |
|---|---|---|---|
| Units [X] One [ ] One w/Acc. unit [ ] | [X] Concrete Slab [ ] Crawl Space | Foundation Walls **Concrete/Avg.** | Floors **Carpet/Tile/Avg.** |
| # of Stories **Two** | [ ] Full Basement [ ] Partial Basement | Exterior Walls **Stucco/Avg.** | Walls **Drywall/Avg.** |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | Basement Area **0.0000** sq.ft. | Roof Surface **Tile/Avg.** | Trim/Finish **Wd. Avg.** |
| [X] Existing [ ] Proposed [ ] Under Const. | Basement Finish **N/A** % | Gutters & Downspouts **None** | Bath Floor **Tile/Vinyl/Avg.** |
| Design (Style) **Single Family** | [ ] Outside Entry/Exit [ ] Sump Pump | Window Type **DualPn./Average** | Bath Wainscot **Fiberglass/Avg.** |
| Year Built **1991** | | Storm Sash/Insulated **None** | Car Storage [ ] None |
| Effective Age (Yrs) **12** | | Screens **Yes/ Avg.** | [X] Driveway # of Cars **2** |
| Attic [ ] None | Heating [X] FWA [ ] HW [ ] Radiant | Amenities | Driveway Surface **Concrete** |
| [ ] Drop Stair [ ] Stairs | [ ] Other **Fuel Gas** | [X] Fireplace(s) # **2** [X] Fence Blk. Wall | [X] Garage # of Cars **2** |
| [ ] Floor [X] Scuttle | Cooling [X] Central Air Conditioning | [X] Patio/Deck [ ] Porch | [ ] Carport # of Cars |
| [ ] Finished [ ] Heated | [ ] Individual [ ] Other | [ ] Pool [X] Other **Balc.** | [X] Att. [ ] Det. [ ] Built-in |
| Appliances [X] Refrigerator [X] Range/Oven | [X] Dishwasher [X] Disposal [ ] Microwave [ ] Washer/Dryer | [ ] Other (describe) | |
| Finished area above grade contains: | 7 Rooms | 4 Bedrooms | 2.5 Bath(s) | 2,496 Square Feet of Gross Living Area Above Grade |

Additional Features **Subject has tile flooring, granite counter tops, two fireplaces, balcony, and a rear patio.**

Comments on the improvements   **The subject appears to be  built with average quality materials and craftsman and is in average condition. The subject's downstairs bathroom has been remodeled. The subject's upstairs bathrooms suffer from deferred maintenance. The subject's upstairs common bathroom tile is in need of repair.**

18

Harris Appraisals

## Residential Appraisal Report

File No. 6690060

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| | 688 N Rimsdale Ave #8 | 688 N. Rimsdale Avenue # 107 | | 688 N. Rimsdale Avenue # 82 | | 688 N. Rimsdale Avenue # 17 | |
| Address  Covina | | Covina | | Covina | | Covina | |
| Proximity to Subject | | Same Complex | | Same Complex | | Same Complex | |
| Sale Price | $ Refinance | | $ 409,000 | | $ 360,000 | | $ 359,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq.ft. | $ 182.43 sq.ft. | | $ 160.57 sq.ft. | | $ 171.85 sq.ft. | |
| Data Source(s) | Site Inspection | Drive By/FNC Data/MLS | | Drive By/FNC Data/MLS | | Drive By/FNC Data/MLS | |
| Verification Source(s) | County Recs | Doc# 1769805 | | Doc# 1744128 | | Doc# N/A | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | N/A | Conventional | | Conventional | | Conventional | |
| Concessions | N/A | No Adjustment | | No Adjustment | | No Adjustment | |
| Date of Sale/Time | N/A | 10/02/2008 | | 09/29/2008 | | Pending | |
| Location | Suburban | Suburban | | Suburban | | Suburban | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 3280 Sqft. | 3358 Sq. Ft. | | 2879 Sq. Ft. | | 3888 Sq. Ft. | |
| View | Residential | Residential | | Residential | | Residential | |
| Design (Style) | Single Family | Single Family | | Single Family | | Single Family | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 18+/- Years | 20 Years | | 20 Years | | 16 Years | |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total 7 Bdrms 4 Baths 2.5 | Total 8 Bdrms 4 Baths 3 | -2,500 | Total 7 Bdrms 4 Baths 2.5 | | Total 7 Bdrms 3 Baths 2.5 | |
| Room Count | | | | | | | |
| Gross Living Area | 20     2,498 sq.ft. | 2,242 sq.ft. | 5,100 | 2,242 sq.ft. | 5,100 | 2,089 sq.ft. | 8,100 |
| Basement & Finished | None | None | | None | | None | |
| Rooms Below Grade | None | None | | None | | None | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Gas FAU C/Air | Gas FAU C/Air | | Gas FAU C/Air | | Gas FAU C/Air | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | 2 Car Garage | | 2 Car Garage | |
| Porch/Patio/Deck | Patio, Balc. | Pto. | 1,000 | Pto. | 1,000 | Pto. | 10,000 |
| | | Time Adj. | -20,000 | | -18,000 | | |
| | | DOM: 40 | | DOM: 137 | | DOM: 79 | |
| Net Adjustment (Total) | | ☐ + ☒ - $ | 16,400 | ☐ + ☒ - $ | 11,900 | ☐ + ☒ - $ | 18,100 |
| Adjusted Sale Price | | Net Adj. -4.0% | | Net Adj. -3.3% | | Net Adj. 5.0% % | |
| of Comparables | | Gross Adj. 7.0% % $ | 392,600 | Gross Adj. 6.7% % $ | 348,100 | Gross Adj. 5.0% % $ | 377,100 |

Summary of Sales Comparison Approach   All market data was confirmed by Multiple Listing Service, Appraiser drive by, Agent or Public Records. Comparables were given consideration and weight based on net and gross adjustments. The comparables included in this report were the best available at the time of inspection and all information was deemed reliable. Gross and net adjustments fall within appraisal guidelines of under 25% and 15% respectively. There was no adjustment made for bedroom count and is considered part of the square footage dollar adjustment. All comparables used in this report are located in similar competing neighborhoods and there is no adjustment made for location. Comparable #1 previously transferred on  6/1/2008 for $327,000. Comparable #4 previously transferred on 8/7/2008 for $150,000. At the time of inspection there were no available comparable sales within the subject market area with a greater gross living area.

COST APPROACH TO VALUE
Site Value Comments  N/A

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE....................................... = $ | |
|---|---|---|
| Source of cost data | Dwelling            2,498 Sq. Ft. @ $ ............. = $ | 0 |
| Quality rating from cost service         Effective date of cost data | Bsmt. 0           Sq. Ft. @ $ ............. = $ | 0 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | |
| | Garage/Carport 480    Sq. Ft. @ $ ............. = $ | 0 |
| | Total Estimate of Cost-New ............. = $ | 0 |
| | Less 0 Physical  Functional  External | |
| | Depreciation ............................ = $( | 0) |
| | Depreciated Cost of Improvements.................................. = $ | 0 |
| | "As-Is" Value of Site Improvements .............................. = $ | |
| | INDICATED VALUE BY COST APPROACH...................... = $ | 0 |

INCOME APPROACH TO VALUE
Estimated Monthly Market Rent $        N/A   X Gross Rent Multiplier     N/A  = $        0  Indicated Value by Income Approach
Summary of Income Approach (including support for market rent and GRM)

Indicated Value by: Sales Comparison Approach $ 372,000      Cost Approach (if developed) $ N/A      Income Approach (if developed) $ N/A
Most weight and consideration has been given to the market approach, it best reflects buyers and sellers for this type of property. The cost Approach is best when the improvements are new. The income approach is not considered since SFRs do not trade based upon their income generating ability.

This appraisal is made ☒ "as is," ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed.
☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed    ☐ subject to the following:
See Attached Addendum.

Based on the scope of work, assumptions, limiting conditions and appraiser's certification, my (our) opinion of the defined value of the real property that is the subject of this report is $  372,000  as of March 27, 2009  , which is the effective date of this appraisal.

Produced using ACI software, 800.234.8727 www.aciweb.com
Page 2 of 2
This form Copyright © 2005-2008 ACI Divison of ISO Claims Services, Inc., All Rights Reserved.
®PAR™ General Purpose Appraisal Report  10/2008
GPAR1004_05 09172009

Harris Appraisals

19

Harris Appraisals
## Residential Appraisal Report
File No. C090050

| FEATURE | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|
| 688 N Rimsdale Ave #8 | | 1022 La Breda Street | | | | | |
| Address  Covina | | Covina | | | | | |
| Proximity to Subject | | 0.62 miles NNE | | | | | |
| Sale Price | $          Refinance | | $          281,000 | $ | | $ | |
| Sale Price/Gross Lv. Area | $      0.00 sq. ft. | $  194.87 sq. ft. | | $        sq. ft. | | $      sq. ft. | |
| Data Source(s) | Site Inspection | Drive By/FNC Data/MLS | | | | | |
| Verification Source(s) | County Recs | Doc# 35354 | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | N/A | Conventional | | | | | |
| Concessions | N/A | No Adjustment | | | | | |
| Date of Sale/Time | N/A | 01/12/2009 | | | | | |
| Location | Suburban | Suburban | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 3280 Sqft. | 4024 Sq. Ft. | -1,500 | | | | |
| View | Residential | Residential | | | | | |
| Design (Style) | Single Family | Single Family | | | | | |
| Quality of Construction | Average | Average | | | | | |
| Actual Age | 18+/- Years | 30 Years | 1,200 | | | | |
| Condition | Average | Average | | | | | |
| Above Grade | Total\|Bdrms\|    Baths | Total\|Bdrms\|    Baths | | Total\|Bdrms\|    Baths | | Total\|Bdrms\|    Baths | |
| Room Count | 7\| 4\|      2.5 | 5\| 3\|      1.5 | 5,000 | | | | |
| Gross Living Area      20 | 2,496 sq. ft. | 1,442 sq. ft. | 21,100 | sq. ft. | | sq. ft. | |
| Basement & Finished | None | None | | | | | |
| Rooms Below Grade | None | None | | | | | |
| Functional Utility | Average | Average | | | | | |
| Heating/Cooling | Gas FAU C/Air | Gas FAU C/Air | | | | | |
| Energy Efficient Items | None | None | | | | | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | | | | |
| Porch/Patio/Deck | Patio, Balc. | Pto. | 1,000 | | | | |
| | | | | | | | |
| | | | | | | | |
| | | DOM :25 | | | | | |
| Net Adjustment (Total) | | ☒ + ☐ - | $     26,800 | ☒ + ☐ - | $       0 | ☒ + ☐ - | $       0 |
| Adjusted Sale Price | | Net Adj. 9.5% % | | Net Adj. 0.0% % | | Net Adj. 0.0% % | |
| of Comparables | | Gross Adj. 10.6% % | $  307,800 | Gross Adj. 0.0% % | $      0 | Gross Adj. 0.0% % | $      0 |
| Summary of Sales Comparison Approach | | | | | | | |

Produced using ACI software, 800 234 8727 www.aciweb.com                Desixm Copyright © 2005-2008 ACI Division of ISO Claims Services, Inc., All Rights Reserved
Additional Comparables                                                                    GPAR™) General Purpose Appraisal Report 1/2005
GPAR1004_05 04113005

cpar™

*20*

ADDENDUM
GRAPHICS

| Client: Borowitz Lozano & Clark LLP | | File No.: CO90050 | |
|---|---|---|---|
| Property Address: 688 N Rimsdale Ave #8 | | Case No.: | |
| City: Covina | State: CA | | Zip: 91722 |

**DEFINITION OF VALUE**...the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:(1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial agreements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by seller as a result of tradition or law in a market area; these costs are readily indentifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

COMMENTS ON DIGITAL SIGNATURE...This report contains digital signatures -- in line with applicable federal law. The affixed digital signature is a true representation of my hand-written signature. Furthermore, the ability to affix my digital signature to this or any other appraisal report is secured from use by parties other than myself by encryption and password protection.

COMMENTS ON COMPETITIVE LISTINGS..." I have considered relevant competitive listings and/or contract offerings in the performance of this appraisal an in the trending information provided in this section. If a trend is indicated, I have attached an addendum providing relevant competitive listing/contract offering data.

COMMENTS ON SALES COMPARISON...All sales are considered the best available and deemed reliable. All sales are considered from competing neighborhood locations. All comparable sales are of similar style. All sales are closed transactions. All sales are considered the best available and deemed reliable. No adjustments were made for date of sale or appreciation. Adjustment differences in above grade living area are based on $20.00 per square foot. No adjustment is made for bedroom count and is considered a part of the square footage dollar adjustment. The selected comparable are considered to be the best available. The adjustments for differences are reasonable and within recommended guidelines.

FINAL RECONCILIATION...The income approach is not considered to be relevant as there is no market data to support this type of analysis. the market approach is traditionally considered to be the most reliable indicator of value as it best reflects the current market conditions, including financing.

SALES HISTORY..The subject property last transferred as the result of a second mortgage on 6/11/2007 for $80,000.

PERSONAL PROPERTY...No items of personal property, fixtures or intangible property were included in the estimated property value, unless otherwise stated in the report.

ENVIRONMENTAL DISCLAIMER...The value estimated in this report is based on the assumption that the property is not negatively affected by the existence of hazardous substances or detrimental environmental conditions. The appraiser is not an expert in the identification of hazardous substances or detrimental environmental conditions. The appraiser's routine inspection of the subject property did not develop any information that indicated any apparent significant hazardous substances or detrimental environmental conditions which would affect the property negatively. It is possible that tests and inspections made by a qualified hazardous substance and environmental expert would reveal the existence of hazardous materials and environmental conditions on or around the property that would negatively affect its value. The appraiser, however, is not qualified to detect such substances. The existence of any potential urea-formaldehyde foam insulation, hazardous waste material or radon may have an effect on the value of the property. We urge the client to retain an expert in this field if desired.

SUPPLEMENTAL CERTIFICATION AND LIMITING CONDITIONS...1. Unless otherwise indicated in this report, the date of this report is the same date as the date of the appraisal.2. Unless otherwise indicated in this report, a financial institution intends to use this report to determine the market value of the subject property for purposes of granting a federally related mortgage loan.3. Unless otherwise indicated in this report, the subject property's market value was based on the cash price.4. Unless otherwise indicated in this report, all usual valuation approaches were utilized.5. Unless otherwise indicated in this report no extraordinary influences (e.g., easements, restrictions, encumbrances, leases, reservations, covenants, contracts, special assessments) on market value exist.6. Unless otherwise indicated and specifically itemized with a value estimate, no personal property, trade fixtures, or intangible items are included in the appraisal of the subject property.7. Unless otherwise indicated in this report the subject property ce not currently listed for sale or subject to any sale agreement or option.8. Unless otherwise indicated in this report and specially itemized, according to public records, listing services and the homeowner, the subject property has not bee transferred in the past 12 months.9. Unless otherwise indicated in this report, the estimated marketing time for the subject property was determined from available data services and listing services. Unless otherwise indicated in this report, information from such data and listing services is believed to be reliable and was considered in the final reconciliation of market value.10. Unless otherwise indicated in this report, the reasoning used to determine the selection of "increasing", "stable", or "declining" in the neighborhood section of current market conditions and trends of this report, was based on information provided by available data services and listing services.11. Unless otherwise indicated in this report, this report is based on current land use regulations and the probability of modification of current land use regulations is unlikely.12. Unless otherwise indicated in this report, the site value listed in the appraisal is determined as though the land is vacant and available for development to its highest investment use and the appraisal of improvements is based on their actual contribution to the site.13. Unless otherwise indicated in this report, the appraised value is not effected by anticipated public or private improvements.14. Unless otherwise indicated in this report, if proposed improvements were appraised the following were (and remain available to be) inspected: Plans, specifications and

2|

ADDENDUM

| Client: Borowitz Lozano & Clark LLP | | File No.: C090050 | |
|---|---|---|---|
| Property Address: 688 N Rimsdale Ave #8 | | Case No.: | |
| City: Covina | State: CA | | Zip: 91722 |

related documentation to identify scope and character of improvements; evidence indicating probable time of completion; and clear and appropriate evidence supporting development costs, anticipated earning, occupancy projections and anticipated competition on completion.15. Unless otherwise indicated in this report, the subject property is not a fractional interest, physical segment, component or partial holding of a property.16. Unless otherwise indicated in this report, information of rental data, operating expenses and capitalization were not obtained due to the lack of reliable rental data for single family homes in the subject property's neighborhood.17. Unless otherwise indicated in this report, the subject property is not a leased fee or lease hold estate.18. Unless otherwise indicated in this report, the existence of hazardous substances, including without limitation, asbestos, polychlorinated biphenyls, petroleum leakage, or agricultural chemicals, which may or may not be present on the property, or other environmental conditions, were not called to the attention of nor did the appraiser become aware of such during the appraiser's inspection. The appraiser has no knowledge of existence of such material on or in the property unless otherwise stated. If the presence of such substances, such as asbestos, urea-formaldehyde, foam insulation, or other hazardous substances or environmental conditions may affect the value of the property, the value estimated is predicated on the assumption that there is no such condition on or in the property or in such proximity there to that it would cause a loss in value.19. Unless otherwise indicated in this report, no other limiting conditions or extraordinary assumptions (e.g. pending lease, atypical financing, completion of improvements) directly affect the appraisal or the analyses, opinions, and conclusions stated herein.20. Additional Certifications:A. Unless otherwise stated in this report, in accordance with the competency provision of the Uniform Standard of Professional Appraisal Practice, I have verified that my knowledge and experience are sufficient to allow me to competently complete this appraisal.B. I have no personal interest or bias with respect to the parties involved or the subject property.C. The appraisal assignment was not based on a requested minimum valuation, a specific valuation. or the approval of a loan, and by compensation is not contingent upon direction in value that favors the cause of the client. the amount of the value estimate, the attainment of a stipulated result or the occurrence of a subsequent event.D. My analyses, opinions, and conclusions were developed, and this report has been prepared in conformity with Uniform Standard of Professional Appraisal Practice. The departure provision of the Uniform Standard of Professional Appraisal Practice was not utilized in preparation of this report.E. The report analyses, opinions and conclusions are limited only by the reported assumptions, limiting conditions and are my personal, unbiased analyses, opinions and conclusions.F. Unless otherwise stated in this report, no one provided significant professional assistance to me in the preparation of this report. I certify that, to the best of my knowledge and belief, the statements contained in this report are true and correct.H. I certify that on the date of the appraisal report I was actively licensed by the appropriate state agency to perform the subject appraisal.

**Neighborhood Description**
The subject is located in a gated planned community of homes consisting of similar age, design, and appeal. The neighborhood exhibits average to good maintenance levels. The subject neighborhood is within relatively close proximity to the 10 Freeway which grants access to employment centers.The subject market is located close to recreational areas, shopping, schools, and municipal services and has average appeal to buyers in the market.

**Neighborhood Market Conditions**
Current market conditions favor standard conventional financing. The subject's market area is not affected by loan discounts, interest buy downs, or concessions. Market time was obtained from multiple listing service data and the appraisers' observations of the subject property's market area. MARKETING TIME: The estimated marketing time for the subject under current market conditions is more than 90 calendar days. This estimate considers size, condition, location, and price range of the subject and surrounding properties.

**Conditions of Appraisal**
Value assigned to the subject in it's "AS IS" condition. Deem this a summary report. Use of this appraisal is intended only for the Client mentioned on page one of GPAR.

## Scope of Work, Assumptions and Limiting Conditions

Scope of work is defined in the Uniform Standards of Professional Appraisal Practice as " the type and extent of research and analyses in an assignment." In short, scope of work is simply what the appraiser did and did not do during the course of the assignment. It includes, but is not limited to: the extent to which the property is identified and inspected, the type and extent of data researched, the type and extent of analyses applied to arrive at opinions or conclusions.

The scope of this appraisal and ensuing discussion in this report are specific to the needs of the client, other identified intended users and to the intended use of the report. This report was prepared for the sole and exclusive use of the client and other identified intended users for the identified intended use and its use by any other parties is prohibited. The appraiser is not responsible for unauthorized use of the report.

The appraiser's certification appearing in this appraisal report is subject to the following conditions and to such other specific conditions as are set forth by the appraiser in the report. All extraordinary assumptions and hypothetical conditions are stated in the report and might have affected the assignment results.

1. The appraiser assumes no responsibility for matters of a legal nature affecting the property appraised or title thereto, nor does the appraiser render any opinion as to the title, which is assumed to be good and marketable. The property is appraised as though under responsible ownership.

2. Any sketch in this report may show approximate dimensions and is included only to assist the reader in visualizing the property. The appraiser has made no survey of the property.

3. The appraiser is not required to give testimony or appear in court because of having made the appraisal with reference to the property in question, unless arrangements have been previously made therefore.

4. Neither all, nor any part of the contents of this report, copy or other media thereof (including conclusions as to the property value, the identity of the appraiser, professional designations, or the firm with which the appraiser is connected), shall be used for any purposes by anyone but the client and other intended users as identified in this report, nor shall it be conveyed by anyone to the public through advertising, public relations, news, sales, or other media, without the written consent of the appraiser.

5. The appraiser will not disclose the contents of this appraisal report unless required by applicable law or as specified in the Uniform Standards of Professional Appraisal Practice.

6. Information, estimates, and opinions furnished to the appraiser, and contained in the report, were obtained from sources considered reliable and believed to be true and correct. However, no responsibility for accuracy of such items furnished to the appraiser is assumed by the appraiser.

7. The appraiser assumes that there are no hidden or unapparent conditions of the property, subsoil, or structures, which would render it more or less valuable. The appraiser assumes no responsibility for such conditions, or for engineering or testing, which might be required to discover such factors. This appraisal is not an environmental assessment of the property and should not be considered as such.

8. The appraiser specializes in the valuation of real property and is not a home inspector, building contractor, structural engineer, or similar expert, unless otherwise noted. The appraiser did not conduct the intensive type of field observations of the kind intended to seek and discover property defects. The viewing of the property and any improvements is for purposes of developing an opinion of the defined value of the property, given the intended use of this assignment. Statements regarding condition are based on surface observations only. The appraiser claims no special expertise regarding issues including, but not limited to: foundation settlement, basement moisture problems, wood destroying (or other) insects, pest infestation, radon gas, lead based paint, mold or environmental issues. Unless otherwise indicated, mechanical systems were not activated or tested.

This appraisal report should not be used to disclose the condition of the property as it relates to the presence/absence of defects. The client is invited and encouraged to employ qualified experts to inspect and address areas of concern. If negative conditions are discovered, the opinion of value may be affected.

Unless otherwise noted, the appraiser assumes the components that constitute the subject property improvement(s) are fundamentally sound and in working order.

Any viewing of the property by the appraiser was limited to readily observable areas. Unless otherwise noted, attics and crawl space areas were not accessed. The appraiser did not move furniture, floor coverings or other items that may restrict the viewing of the property.

9. Appraisals involving hypothetical conditions related to completion of new construction, repairs or alteration are based on the assumption that such completion, alteration or repairs will be competently performed.

10. Unless the intended use of this appraisal specifically includes issues of property insurance coverage, this appraisal should not be used for such purposes. Reproduction or Replacement cost figures used in the cost approach are for valuation purposes only, given the intended use of the assignment. The Definition of Value used in this assignment is unlikely to be consistent with the definition of Insurable Value for property insurance coverage/use.

11. The ACI General Purpose Appraisal Report (GPAR™) is not intended for use in transactions that require a Fannie Mae 1004/Freddie Mac 70 form, also known as the Uniform Residential Appraisal Report (URAR).

Additional Comments Related To Scope Of Work, Assumptions and Limiting Conditions



This form Copyright © 2005-2008 ACI Division of ISO Claims Services, Inc., All Rights Reserved.
GPAR™ General Purpose Appraisal Report 10/2008
GPARLIM_09 06112008

File No. C080060

## Appraiser's Certification

The appraiser certifies that, to the best of the appraiser's knowledge and belief:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are the appraiser's personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. Unless otherwise stated, the appraiser has no present or prospective interest in the property that is the subject of this report and has no personal interest with respect to the parties involved.

4. The appraiser has no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

5. The appraiser's engagement in this assignment was not contingent upon developing or reporting predetermined results.

6. The appraiser's compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

7. The appraiser's analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

8. Unless otherwise noted, the appraiser has made a personal inspection of the property that is the subject of this report.

9. Unless noted below, no one provided significant real property appraisal assistance to the appraiser signing this certification. Significant real property appraisal assistance provided by:

Additional Certifications:
None have been stipulated.

Definition of Value: ☒ Market Value    ☐ Other Value: _____
Source of Definition: Fannie Mae
DEFINITION OF VALUE...the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:(1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial agreements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by seller as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

ADDRESS OF THE PROPERTY APPRAISED:
688 N Rimsdale Ave #8
Covina, CA 91722
EFFECTIVE DATE OF THE APPRAISAL: March 27, 2009
APPRAISED VALUE OF THE SUBJECT PROPERTY $ 372,000

APPRAISER                                         SUPERVISORY APPRAISER

Signature:                                        Signature: _____
Name: Chad Harris                                 Name: _____
State Certification #                             State Certification # _____
or License # AL031917                             or License # _____
or Other (describe): _____ State #:            State: _____
State: CA                                         Expiration Date of Certification or License: ____
Expiration Date of Certification or License: 09/18/2009    Date of Signature: _____
Date of Signature and Report: 03/29/2009          Date of Property Viewing: _____
Date of Property Viewing: March 27, 2009          Degree of property viewing:
Degree of property viewing:                       ☐ Interior and Exterior  ☐ Exterior Only  ☐ Did not personally view
☒ Interior and Exterior  ☐ Exterior Only  ☐ Did not personally view



Produced using ACI software, 800 234 8727 www.aciweb.com
Page 2 of 2

This form Copyright © 2005-2008 ACI Division of ISO Claims Services, Inc. All Rights Reserved.
(©PAR™) General Purpose Appraisal Report 10/2008
GPAR2M_05 05142009

Harris Appraisals

24

DIMENSION LIST ADDENDUM

| Client: Borowitz Lozano & Clark LLP | | File No.: C090050 |
|---|---|---|
| Property Address: 688 N Rimsdale Ave #8 | | Case No.: |
| City: Covina | State: CA | Zip: 91722 |

| GROSS BUILDING AREA (GBA) | | 2,498 | |
|---|---|---|---|
| GROSS LIVING AREA (GLA) | | 2,498 | |
| Area(s) | Area | % of GLA | % of GBA |
| Living | 2,498 | | 100.00 |
| Level 1 | 1,140 | 45.67 | 45.67 |
| Level 2 | 1,358 | 54.33 | 54.33 |
| Level 3 | 0 | 0.00 | 0.00 |
| Other | 0 | 0.00 | 0.00 |
| | GBA | | |
| Basement | 0 | | |
| Garage | 480 | | |

| Area Measurements | | | | Area Type | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Measurements | Factor | Total | | Level 1 | Level 2 | Level 3 | Other | Bsmt. | Garage |
| 22.00 x 20.00 x 1.00 = 440.00 | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
| 10.00 x 4.00 x 1.00 = 40.00 | | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
| 44.00 x 25.00 x 1.00 = 1,100.00 | | | | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 24.00 x 1.00 x 1.00 = 24.00 | | | | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 16.00 x 1.00 x 1.00 = 16.00 | | | | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 56.00 x 11.00 x 1.00 = 616.00 | | | | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| 54.00 x 10.00 x 1.00 = 540.00 | | | | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| 40.00 x 6.00 x 1.00 = 200.00 | | | | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |

25



26







27



28

  



30





3/

### FLOORPLAN

| | |
|---|---|
| Client: Borowitz Lozano & Clark LLP | File No.: C090050 |
| Property Address: 688 N Rimsdale Ave #8 | Case No.: |
| City: Covina | State: CA      Zip: 91722 |



Comments:

| AREA CALCULATIONS SUMMARY | | |
|---|---|---|
| **Code** **Description** | **Net Size** | **Net Totals** |
| GLA1  First Floor | 1140.0 | 1140.0 |
| GLA2  Second Floor | 1356.0 | 1356.0 |
| GAR   Garage | 480.0 | 480.0 |
| | | |
| Net LIVABLE Area      (Rounded) | | 2496 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| **Breakdown** | | **Subtotals** |
| **First Floor** | | |
| 25.0  x  44.0 | | 1100.0 |
| 1.0  x  24.0 | | 24.0 |
| 1.0  x  16.0 | | 16.0 |
| **Second Floor** | | |
| 11.0  x  56.0 | | 616.0 |
| 10.0  x  54.0 | | 540.0 |
| 5.0  x  40.0 | | 200.0 |
| | | |
| 6 items      (Rounded) | | 2496 |

32



**LOCATION MAP**

| Client: Borowitz Lozano & Clark LLP | | File No.: C090050 | |
|---|---|---|---|
| Property Address: 688 N Rimsdale Ave #8 | | Case No.: | |
| City: Covina | State: CA | | Zip: 91722 |

Comparable Sale 4
1022 La Breda Street
Covina, CA 91722-2630
(0.62 miles NNE)

Subject
688 N Rimsdale Ave #8
Covina, CA 91722-3543

Comparable Sale 2
688 N. Rimsdale Avenue # 82
Covina, CA 91722-3553

Comparable Sale 3
688 N. Rimsdale Avenue # 17
Covina, CA 91722-3544

Comparable Sale 1
688 N. Rimsdale Avenue # 107
Covina, CA 91722-3555

33

# EXHIBIT 3

34

XXXXXX2773
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
-------------------------------------------------X

Chapter 13
IN RE:                                           Case # 09-16697
ELIZABETH VEGA;

       Debtor(s)
----------------------------------------------X

## EXHIBIT A

### ITEMIZATION OF CLAIM

#### Total Claim as of 03/24/2009

| Item | Amount |
|------|--------|
| Principal Balance | $395,504.94 |
| Interest | $11,326.09 |
| Late Charge[s] | $197.42 |
| Pre-Petition Foreclosure Fees | $540.00 |
| Pre-Petition Foreclosure Costs | $1,719.83 |
| Appraisal[s] / Broker`s Price Opinion[s] | $345.00 |
| Property Inspection[s] | $73.80 |
| Escrow Shortage | $7,737.34 |
| Suspense Balance | $-941.41 |
| Grand Total | $416,503.01 |

#### Total Arrearage as of 03/24/2009

| Item | | Amount |
|------|------|--------|
| Regular Monthly Payments | 8/1/08-3/1/09 @ 1974.23 per month | $15,793.84 |
| Late Charge[s] | | $197.42 |
| Pre-Petition Foreclosure Fees | | $540.00 |
| Pre-Petition Foreclosure Costs | | $1,719.83 |
| Appraisal[s] / Broker`s Price Opinion[s] | | $345.00 |

| | |
|---|---|
| Property Inspection[s] | $73.80 |
| Escrow Shortage | $7,737.34 |
| Suspense | $-941.41 |
| Grand Total | $25,465.82 |

Next Post Petition Payment Amount: $2,259.48.

 

**This page is part of your document - DO NOT DISCARD**

**06 1600576**

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
07/20/06 AT 08:00am**

**TITLE(S) :** _____





L E A D    S H E E T



FEE 

D.T.T.



CODE
20

CODE
19

CODE
9____

**Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.**          **Number of AIN's Shown**

          **THIS FORM IS NOT TO BE DUPLICATED**          

NEW CENTURY TITLE (GLENDALE)

2

Recording Requested By:
New Century Mortgage
Corporation
Return To:
New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

06 1600576

Prepared By:
New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

5260517-RC
8434-14-63

—————[Space Above This Line For Recording Data]—————

## DEED OF TRUST

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated July 8, 2006
together with all Riders to this document.
(B) "Borrower" is ELIZABETH VEGA, an Unmarried Woman

Borrower's address is 688 N. RIMSDALE AVE #8, Covina, CA 91722
. Borrower is the trustor under this Security Instrument.
(C) "Lender" is New Century Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of California

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005 1/01

-6(CA) (0207)
Page 1 of 15
VMP MORTGAGE FORMS - (800)521-7291

07/28/06

39

3

Lender's address is 18400 Von Karman, Suite 1000, Irvine, CA 92612

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is NEW CENTURY TITLE

(E) "Note" means the promissory note signed by Borrower and dated  July 8, 2006
The Note states that Borrower owes Lender FOUR HUNDRED TWO THOUSAND AND 00/100
                                                                Dollars
(U.S. $402,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than 08/01/2036
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

Prepayment Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

07/28/06

-6(CA) (0207)                         Page 2 of 15          Initials          Form 3005   1/01

06  1600576

40

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
County of Los Angeles :
[Type of Recording Jurisdiction]   [Name of Recording Jurisdiction]
LOT 100 OF TRACT NO. 46810, IN THE CITY OF COVINA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1134 PAGES 54 TO 60 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Parcel ID Number: 8434-014-063 which currently has the address of
688 N. RIMSDALE #8 [Street]
Covina [City], California 91722 [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

-6(CA) (0207) Page 3 of 18 Form 3005 1/01

06 1600576

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

-6(CA) (0207)                        Page 4 of 15                  Initials:          Form 3005    1/01

08 1600576

la writing. In the event of such waivers, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

-6(CA) (0207)                    Page 8 of 15                    Form 3005   1/01

06 1600576

7

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

-6(CA) (0207)                          Page 6 of 15                                      Form 3005   1/01

06  1600576

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6(CA) (0207)                    Page 7 of 16                    Form 3005   1/01

06 1600576

45

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6(CA) (0207)                    Page 8 of 15                    Initials ___    Form 3005   1/01

06 1600576

4¢

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

-6(CA) (0207).    Page 9 of 15    Initials:    Form 3005   1/01

06  1600576

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

-6(CA) (0207)                     Page 11 of 15                Initials: ___            Form 3005    1/01

07/28/06

**06  1600576**

49

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6(CA) (0207)                    Page 12 of 15                    Form 3005   1/01

06·1600576

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

-6(CA) (0207)                          Page 13 of 15                          Form 3005   1/01

06 1600576

57

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____    _____ (Seal)
ELIZABETH VEGA    -Borrower

_____

_____    _____ (Seal)
    -Borrower

_____ (Seal)    _____ (Seal)
    -Borrower    -Borrower

_____ (Seal)    _____ (Seal)
    -Borrower    -Borrower

_____ (Seal)    _____ (Seal)
    -Borrower    -Borrower

-6(CA) (0207)    Page 14 of 15    Form 3005   1/01

06 1600576

State of California
County of Los Angeles        } ss.

On  7/8/06        before me, Charity Lawrence, Notary Public
                                                    personally appeared

Elizabeth Vega

personally known to me

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



CHARITY LAWRENCE
Commission # 1609881
Notary Public - California
Los Angeles County
My Comm. Expires Sep 29, 2009

_____ (Seal)

07/20/06

-6(CA) (0207)                    Page 15 of 16        Initials ___        Form 3005   1/01

06 1600576

53

 

# ADJUSTABLE RATE NOTE

**(LIBOR Six Month Index (as Published in *The Wall Street Journal*) - Rate Caps)**
**3 YEAR RATE LOCK, 5 YEAR INTEREST ONLY PERIOD**

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT.**

July 8, 2006                    Covina                    California
(Date)                         (City)                    (State)

688 N. RIMSDALE #8, Covina, CA 91722

(Property Address)


NOTE

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 402,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is New Century Mortgage Corporation.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 5.990%. The interest rate I will pay will change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay interest by making a payment every month. Beginning on the Amortization Start Date, I will pay principal each month in addition to interest.

I will make my monthly payment on the first day of each month beginning on September 1, 2006 .

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on 08/01/2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 18400 Von Karman, Suite 1000, Irvine, CA or at a different place if required by the Note Holder.

By: _____

NCMC
Fixed/ARM Six Month LIBOR
Interest Only Note (Multistate)
RE-440 (051005)                    *Page 1 of 5*

**(B) Amount of My Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $2,006.65 . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**(D) Withholding**

If I am a non-resident alien, I understand that all payments due hereunder shall be paid without reduction for any taxes, deductions or withholding of any nature. If such tax, deduction or withholding is required by any law to be made from any payment to the Note Holder, I shall continue to pay this Note in accordance with the terms hereof, such that the Note Holder will receive such amount as it would have received had no such tax, deduction or withholding been required.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of August, 2009  and on the same day of every 6th month thereafter.  Each date on which my interest rate could change is called an "Interest Rate Change Date."

**(B) The Index**

Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index plus a margin. The "Index" is the average of interbank offered rates for six-month dollar deposits in the London market ("LIBOR"), as published in *The Wall Street Journal* "Money Rates" Table. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Interest Rate Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

On each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding Six And Five Hundredth(s) percentage points (6.050%) to the Current Index. The Note Holder will then round this figure to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Rate Change Date.

**(I) Interest-Only Period.** The "Interest-Only Period" is the period from the date of this Note through  August 1, 2011, called the "Amortization Start Date." During the Interest-Only Period, my monthly payments will only pay the interest I owe. During the Interest-Only Period, the Note Holder will calculate the amount of my monthly payment to be one-twelfth (1/12th) of one (1) year's interest at the then applicable interest rate. The result of this calculation will be the amount of my monthly payment until changed.

This is a true and accurate account of the original.

BY: _____ Virtual Escrow, Inc.

NCMC
Fixed/ ARM Six Month LIBOR
Interest Only Note (Multistate)
RB-440 (051005)

Page 2 of 5

55

(ii) **Amortization Period.** Beginning on the Amortization Date my monthly payments will include principal. Starting on the Amortization Start Date and continuing until the Maturity Date, on each Interest Rate Change Date the Note Holder will calculate the amount of the monthly payment that would be sufficient to fully repay the remaining unpaid principal in equal monthly payments by the Maturity Date at the new interest rate, assuming, for purposes of each calculation, that the interest rate did not change again. The result of this calculation will be the new amount of my monthly payment until the next Interest Rate Change Date.

**(D) Limit on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 7.990 % or less than 5.990 %. Thereafter, my interest rate will never be increased or decreased on any single Interest Rate Change Date by more than one and one half percentage points (1.5%) from the rate of interest I have been paying for the preceding month. My interest rate will never be greater than 12.990 % or less than 5.990%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Interest Rate Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Rate Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment at least 25 days before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note and to pay the interest then accruing at the Note rate as of the date my prepayments are applied. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

This is executed to be a true and correct copy of the original.

By: Virtual Escrow Inc.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% or $5.00, whichever is greater of my overdue monthly payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amount owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor, and further waive all relief under any valuation and appraisement laws. "Presentment" means the right to

NCMC
Fixed/ ARM Six Month LIBOR
Interest Only Note (Multistate)
RE-440 (051005)

Page 4 of 5

require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. GOVERNING LAW - SECURED NOTE

This Note is governed by federal law and the law of the jurisdiction in which the property encumbered by the Security Instrument (as defined below) is located. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

### CAUTION

### IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS NOTE BEFORE YOU SIGN IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____  - Borrower      _____  - Borrower
ELIZABETH VEGA

_____  - Borrower      _____  - Borrower

_____  - Borrower      _____  - Borrower

_____  - Borrower      _____  - Borrower

(Sign Original Only)

This is certified to be
a true and correct copy
of the original.

By: _____
Virtual Escrow, Inc.

NCMC
Fixed/ ARM Six Month LIBOR
Interest Only Note (Multistate)
RE-440 (051005)

Page 5 of 5

58

Loan No. XXXXXX2773

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
-----------------------------------------------X          Chapter 13
IN RE:                                                    Case # 09-16697

ELIZABETH VEGA;

        Debtor(s)                                         **REQUEST FOR NOTICE**
-----------------------------------------------X

SIR:

  **PLEASE TAKE NOTICE** that U.S. Bank National Association as Trustee Under Pooling and Servicing Agreement Dated as of December 1, 2006 Mastr Asset Backed Securities Trust 2006-HE5 Mortgage Pass-Through Certificates Series 2006-HE5 hereby appears in the above action, and demands that all papers in the case be served on U.S. Bank National Association as Trustee Under Pooling and Servicing Agreement Dated as of December 1, 2006 Mastr Asset Backed Securities Trust 2006-HE5 Mortgage Pass-Through Certificates Series 2006-HE5 at the address stated below.

  **PLEASE TAKE FURTHER NOTICE** that the foregoing demand includes demand not only for notices and papers referred to in the rules specified above but also includes, without limitation, a demand for any and all orders and notices of any application, including notice of any application to sell real estate property held by the debtor, motion, petition, pleading, request, complaint or demand, whether formal or informal, whether written or oral, or whether transmitted or conveyed by mail, delivery, telephone, telegraph, telex or otherwise, which affects the debtor or the property of the debtor.

Dated: July 30, 2009
  Plainview, New York

            /S/ Andrew Goldberg
            Authorized agent for Barclays Capital Real Estate Inc, dba HomEq Servicing as servicing agent for U.S. Bank National Association as Trustee Under Pooling and Servicing Agreement Dated as of December 1, 2006 Mastr Asset Backed Securities Trust 2006-HE5 Mortgage Pass-Through Certificates Series 2006-HE5
            c/o Rosicki, Rosicki & Associates, P.C.
            Main Office: 51 E. Bethpage Road
            Plainview, New York 11803
            Phone: 516-741-2585
            Fax: 516-873-7244
            Email: bkmail@rosicki.com

TO:

Michael E Clark, Esq.
Borowitz, Lozano & Clark
100 N Barranca Ave Ste 250
West Covina, CA 91791

Kathy A. Dockery, Esq.
700 S. Flower Street
Suite 1950
Los Angeles, CA 90017

# EXHIBIT 4



# Mortgage Statement

**U.S. bank**
The Five Service Guaranteed
Home Mortgage

**OVERNIGHT DELIVERY:**
U.S. Bank Home Mortgage
4801 Frederica Street
Owensboro, KY 42301



**Contact Information**

24 Hour Automated Service:  1-800-344-5015
Customer Service Hours:
Monday - Friday, 7:00 a.m. - 8:00 p.m. CT

Hearing Impaired:  1-800-674-6563
Monday - Friday, 8:00 a.m. - 5:00 p.m CT

Correspondence Address:
U.S. Bank Home Mortgage
P.O. Box 20005
Owensboro, KY 42304-0005

Overnight Payment Delivery Only:
U.S. Bank Home Mortgage
4801 Frederica Street
Owensboro, KY 42301

www.usbankhomemortgage.com



90714-0003191-001-1-000-010-000-000
ELIZABETH VEGA
688 N RIMSDALE AVE APT 8
COVINA CA 91722-3543

Statement Date                    06/01/09



**Payment Summary**

| | |
|---|---|
| SCHEDULED DUE DATE | 06/11/09 |
| We may contact you if payment is not received by scheduled due date | |
| LOAN DUE DATE | 01/11/08 |
| PAYMENT FACTORS | |
| Principal & Interest | $801.40 |
| PAYMENT AMOUNT DUE | $801.40 |
| Past Due Amount(s) | $4,007.00 |
| Unpaid Late Charge(s) | $120.21 |
| | |
| TOTAL AMOUNT DUE | $4,928.61 |
| **IF PAID AFTER 06/26/09, PAY | $4,958.68 |

Payment processing cutoff time is 8:00 p.m. Central Time, Monday - Friday.** Payments received after cutoff time will be applied to your account on the next business day. Late charges may be assessed if payments are not received on time as specified in the terms of your mortgage agreement. **Payments due on a weekend or legal holiday will not be assessed a late charge if received by cutoff time the following business day. Cutoff times may vary if choosing alternative payment options.

**Loan Information**

| | |
|---|---|
| ACCOUNT NUMBER | 8250195278 |
| PROPERTY ADDRESS: | 688 N RIMSDALE AVE |
| | COVINA CA 91722 |
| | |
| INTEREST RATE | 11.850% |
| | |
| BALANCES | |
| Principal (Not a Payoff Amount) | $78,073.63 |
| Escrow Advance | ($661.00) |
| | |
| YEAR TO DATE | |
| Interest Paid | $0.00 |
| Taxes Paid | $0.00 |

SEE REVERSE SIDE FOR ADDITIONAL IMPORTANT INFORMATION

**Transaction Activity**

| TRANSACTION DESCRIPTION | DUE DATE | TRANSACTION DATE | TOTAL RECEIVED | PRINCIPAL | INTEREST | ESCROW | OPT INS/ PRODUCT | SUBSIDY | SUSPENSE | FEES |
|---|---|---|---|---|---|---|---|---|---|---|
| Misc PC,BK,REO Disb | 04/09 | 00/00/00 | | | | | | | | |
| Tax Disb | | 05/13/09 | | | | 661.00- | | | | |

## IMPORTANT MESSAGES

Please be advised that we are aware of your Bankruptcy proceedings and this document is being provided for informational purposes only and should not be construed as a demand for payment. In addition, the contractual due date shown may not reflect the current due date under the terms of your bankruptcy plan. Post-petition payments scheduled for payment outside your plan should be paid on their normal due date.

DETACH AND RETURN BOTTOM PORTION WITH YOUR PAYMENT

---

**U.S. bank**
Home Mortgage

| LOAN NUMBER | SCHEDULED DUE DATE | PAYMENT AMOUNT | PAST DUE AMOUNT | TOTAL AMOUNT DUE | *IF RECEIVED AFTER CUTOFF | PAYMENT AMT DUE |
|---|---|---|---|---|---|---|
| 8250195278 | 06/11/09 | $801.40 | $4,007.00 | $4,928.61 | 06/26 | $4,958.68 |

Payment processing cutoff time is 8:00 p.m. Central Time, Monday - Friday.** Payments received after cutoff time will be applied to your account the next business day. Late charges may be assessed if payments are not received on time as specified in the terms of your mortgage agreement. **Payments due on a weekend or legal holiday will not be assessed a late charge if received by cutoff time the following business day. Cutoff times may vary if choosing alternative payment options.

ELIZABETH VEGA

**OVERNIGHT DELIVERY:**

U.S. Bank Home Mortgage
P.O. Box 20005
Owensboro, KY 42304-0005

U.S. Bank Home Mortgage
4801 Frederica Street
Owensboro, KY 42301

H

☐ Check here if name, address and/or phone number changes have been indicated on reverse side.

| | |
|---|---|
| Additional Principal | $ |
| Additional Escrow | $ |
| Other (Please specify) | $ |
| Total Amount Enclosed | $ |

7608250195278000000801400000841478

# EXHIBIT 5

65



**This page is part of your document - DO NOT DISCARD**

 

# 20090142601

Pages:
0003

**Recorded/Filed In Official Records
Recorder's Office, Los Angeles County,
California**

**02/03/09 AT 04:59PM**

| | |
|---|---|
| FEES: | 23.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 23.00 |

## TITLE(S) : ABSTRACT JUDGMENT

 



LEADSHEET



200902031410065



001204825

SEQ:
01

DAR - Mail (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**





COUNTY OF LOS ANGELES
# REGISTRAR-RECORDER/COUNTY CLERK
P.O. BOX 53115, LOS ANGELES, CALIFORNIA 90053-0115 / www.lavote.net

**DEAN C. LOGAN**
REGISTRAR-RECORDER/COUNTY CLERK

## NOTICE OF INVOLUNTARY LIEN

California Government Code Section 27297.5 requires the County Recorder to notify persons against whom an Involuntary lien has been recorded.

You are hereby notified that the enclosed document <u>may</u> constitute a lien against your real property.

California law provides that a lien cannot be released without a signed release from the claimant.

**You may wish to contact the lien claimant or your attorney regarding this matter. This department has no involvement with the placement of the lien on your property. This is merely a notification, as required by State Law, to assure that you are aware of the lien.**

> ➤ **PLEASE DO NOT TELEPHONE THE RECORDER'S OFFICE.**
> ➤ **WE HAVE NO ADDITIONAL INFORMATION REGARDING THIS MATTER.**
> ➤ <u>**CONTACT THE PERSON CLAIMING THIS LIEN AGAINST YOU.**</u>